**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Charles Greenwood, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 25 C 8121 |
| v. | ) |
| | ) Judge Jorge L. Alonso |
| Express Technologies LTD. f/ka | ) |
| Express VPN International LTD., | ) |
| | ) |
| Defendant. | ) |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Defendant Express Technologies offers a subscription for its virtual private network ("VPN") that automatically renews every twelve months. R. 34 ¶ 1. Plaintiff brought this putative class alleging that Express engaged in deceptive practices to trick him into automatic renewals. *Id.* As alleged, Plaintiff enrolled in a one-year subscription in May 2022 without knowing that the subscription would automatically renew, and Express automatically renewed the subscription in May 2023 and in May 2024 without Plaintiff's knowledge or permission. *Id.* ¶¶ 91–95. Express now moves to dismiss on three grounds. R. 42. First, that the Court lacks specific personal jurisdiction over Express. Second, that the Terms of Service compel arbitration. And third, that Plaintiff failed to state a claim. The Court heard oral argument on March 26, 2026. For the reasons stated below, Express's motion to dismiss is denied without prejudice.

**Discussion**

**1. Personal Jurisdiction**

As the Seventh Circuit has explained, "[t]here are various formulations of the standard for establishing specific personal jurisdiction, but they may be condensed to three essential requirements: (1) the defendant must have purposefully availed himself of the privilege of

conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (citations omitted).

Regarding the first element, a defendant has "purposefully established sufficient minimum contacts to subject it to personal jurisdiction" in the forum state if the defendant "intentionally served" that market. *Logan Productions, Inc. v. Optibase, Inc.*, 103 F.3d 49, 53 (7th Cir. 1996). To answer whether Express "intentionally served" the Illinois market, the Court must "examine [Express's] contacts with [Illinois]." *Id.* This includes contacts forged after Plaintiff initially signed up for the VPN in May 2022. *Id.; see also Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 106 (1987) (considering total sales of product within the forum state in the four years following the sale giving rise to the plaintiff's injury).

Plaintiff alleges more than enough to establish that Express intentionally served the Illinois market. Express has been running sponsored advertisements on Google with the keyword "Chicago" since at least March 2022. R. 34 ¶ 25. By way of example, the complaint presents an archival screenshot from August 2023 of a Google query for "chicago vpns" where Express's website appears as the third search result and the summary of the website states: "Best Chicago VPN (Get a Chicago IP Address Fast). The best VPN for Chicago is ExpressVPN." *Id.* ¶ 26. Since at least June 2022, Express's website has included a webpage that specifically targets Chicago consumers and is titled "Best Chicago VPN servers." *Id.* ¶ 18. This page includes a question: "What is the best VPN for Chicago?" *Id.* ¶ 20. And answer: "The best VPN for Chicago is ExpressVPN, with nextgen 10-Gbps servers and server locations in 105 countries around the world. Select our Chicago server location or let ExpressVPN's Smart Location feature

2

automatically choose the best server for your network." *Id.* The page also includes a heading which states: "Stream your favorite Chicago sports teams with a VPN" and "follow your favorite Chicago teams, including the Bears, Cubs, White Sox, Bulls, and Blackhawks." *Id.* ¶ 22. Additionally, since December 2023, Express's website has included a webpage that specifically targets Illinois consumers and is titled "Best VPN for Illinois." *Id.* ¶ 16. The page contains subheadings with titles such as "How to get an Illinois VPN," and "Download an Illinois VPN for all your devices." *Id.* Finally, as alleged on information and belief, Express generates over $3 million in annual revenue from Illinois alone, based on an estimated over 34,000 Illinois subscribers. *Id.* ¶¶ 30–33.

At oral argument, Express argued that the above facts are not relevant to establishing specific personal jurisdiction. Express argued that the Court should consider only the specific webpage where Plaintiff submitted his credit card—which does not mention Illinois or Chicago—and disregard Express's advertisements and other pages on Express's website that expressly targeted both Illinois and Chicago.

It's true that for the Court to exercise specific personal jurisdiction, the defendant's "suit-related conduct must create [the] substantial connection" with Illinois. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (citations omitted). But Express draws too narrow of a circle when defining "suit-related conduct." Courts look at the "overall relationship between [a defendant], [the forum state], and the litigation." *Logan Productions*, 103 F.3d at 53. And Express has "thoroughly, deliberately, and successfully exploited the Illinois market" for the purpose of recruiting consumers to sign up for their VPN service, exactly as Plaintiff did here. *See uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 427 (7th Cir. 2010). Express's advertisements and website pages directly targeting Illinois and Chicago constitute suit-related conduct that establishes sufficient minimum contacts.

3

Regarding the second element, Plaintiff's alleged injury arose from Express's extensive scheme to exploit and sell to the Illinois market. And regarding the third element, Express briefly states that "jurisdiction would be unreasonable because it is a [company based in the British Virgin Islands] with no offices in the U.S." R. 43 at 13. But once "minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi*, 480 U.S. at 114. And "there is no question that Illinois has a strong interest in providing a forum for its residents to seek redress for injuries suffered within the state inflicted by out-of-state actors." *Liu v. Li*, 2026 WL 184539, at *8 (N.D. Ill. Jan. 23, 2026).

For the reasons stated above, the Court finds that it has personal jurisdiction over Express. The Court thus turns to the remaining issues in dispute.

### 2. Terms of Service

In May 2022, when Plaintiff enrolled in a one-year subscription for Express's VPN, Plaintiff agreed to the May 2022 Terms of Service on Express's website. In his response brief, Plaintiff provides just one conclusory assertion in which he "disputes that he was bound by any version of the [Terms of Service]." R. 48 at 14. Beyond this sentence, Plaintiff fails to substantively contest that he accepted the May 2022 Terms of Service.

Where assent to an online contract is passive, as in this case with Express's website, "a court will recognize an enforceable contract only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Domer v. Menard, Inc.*, 116 F.4th 686, 695 (7th Cir. 2024) (citations omitted). Here, when Plaintiff signed up for his VPN subscription with Express in May 2022, he

4

was required to click a "Join Now" button as part of a checkout flow that was next to a clearly visible, bright green, and underlined "Terms of Service" hyperlink. R. 31-1 at 2. Having reviewed the screenshot of the webpage at R. 31-1, the Court finds that hyperlink was reasonably conspicuous and that Plaintiff unambiguously manifested his assent when he clicked "Join Now." The Court notes this identical issue was raised in another class action against Express brought in the Central District of California, and that the California court reached the same finding based on the same webpage. *See Millar v. Express Techs. Ltd.*, 2025 WL 4061252, at *11 (C.D. Cal. Nov. 25, 2025) ("In addition to the contrasting color, the court observes that the hyperlink is on a page that is not otherwise crowded with text, is not in exceedingly small font, and is not otherwise so visually obscured that would render it not reasonably conspicuous.").

The May 2022 Terms of Service contained a mandatory arbitration provision. R. 31-2 at 11–13. But they also contained a unilateral modification clause as follows:

> ExpressVPN may update the Terms from time to time without notice. If you continue to use ExpressVPN's Services, Content, Site, Apps, or Software after these changes take effect, then you agree to the revised Terms. The current version of the Terms is available on the Site. You understand and agree that it is your obligation to review these Terms from time to time in order to stay informed on current rules and obligations. Notification on any core changes to the Terms will be provided to subscribers through an email message or update to the Site. Your use of the Content or Services following the changes to these Terms constitutes your acceptance of the changed Terms.

*Id.* at 2–3. In October 2022, Express updated its Terms of Service and removed the arbitration provision. *See* R. 49-3. Plaintiff argues that per Express's own modification clause, the October 2022 Terms of Service superseded the May 2022 Terms of Service and as such, that Plaintiff is no longer subject to mandatory arbitration. R. 48 at 14. In response, Express argues that the arbitration clause was not modified because the modification clause required that "[n]otification on any core

changes to the Terms will be provided to subscribers through an email message." R. 52 at 9 (citing the May 2022 modification clause). But Express's argument fails because Express quotes its own contractual language out of context and ignores the rest of the sentence which states that a notification may also be made through an "update to the Site." R. 31-2 at 2–3. And there is no dispute that Express updated its website. The Court finds that Express made unilateral modifications to its terms and that Express is bound by these modifications pursuant to its own unilateral modification clause. As such, the Court finds that the October 2022 Terms of Service superseded the May 2022 Terms of Service and that the parties are no longer subject to a mandatory arbitration provision.

Critically, however, the October 2022 Terms of Service contained a forum selection clause which requires that any litigation "arising out of or relating to this Agreement or the use of the Services shall be finally settled by the applicable Courts located in Tortola, British Virgin Islands." R. 49-3 at 8. Following October 2022 and through the present, as Express has made additional updates to its Terms of Service, the Terms have maintained this same forum selection clause. *See* R. 49-4 at 8; R. 49-5 at 10. As such, the Court finds that although the parties are no longer bound by a mandatory arbitration provision, the parties are bound by the forum selection cause.

The Court notes that the forum selection clause is potentially dispositive of the Court's ability to hear this case. The Court thus orders further briefing on the impact of the forum selection clause. Because this issue is potentially dispositive, the Court will refrain from considering whether Plaintiff failed to state a claim until it determines the appropriate forum.

**Conclusion**

For the reasons stated above, the Court orders further briefing on the impact of the forum selection clause as follows: Plaintiff shall raise any objections to the forum selection clause by 4/7/26, Defendant shall respond by 4/14/26, and Plaintiff shall reply by 4/21/26. Alternatively, the parties may file a stipulation of dismissal if Plaintiff agrees to dismiss based on the forum selection clause. Or a joint status report if Defendant agrees to waive the forum selection clause. Express's motion [42] to dismiss is denied without prejudice pending consideration of the forum selection clause.

**SO ORDERED.**                                  **ENTERED: March 30, 2026**

**HON. JORGE L. ALONSO**
**United States District Judge**

7